2:06-CR-186-PMP(PAL)

# RESOLUTION OF THE SHAREHOLDERS AND THE BOARD OF DIRECTORS OF

# THE POWER COMPANY, INC.

### A Nevada Corporation

The Shareholders and the Board of Directors of THE POWER COMPNAY, INC. (the "Corporation") hereby Resolve, Approve, and Direct that:

1.     The Shareholders and Directors of THE POWER COMPANY, INC., have read the attached Criminal Information and Plea Memorandum, and have consulted with counsel and understand the charges and the consequences of a plea of guilty pursuant to the Plea Memorandum;

2.     The Shareholders and Directors of THE POWER COMPANY, INC., authorize and direct the Corporation to plead guilty to the felony charge set forth in the Criminal Information, and to enter into and comply with all provisions of the agreement contained in the Plea Memorandum;

3.     The Shareholders and Directors of THE POWER COMPANY, INC., hereby authorize and appoint attorney TONY SGRO as the Corporation's attorney-in-fact for the limited purposes of taking these actions and entering a guilty plea to the charge set forth the Criminal Information on behalf of the Corporation. This authorization and and grant of limited power-of-attorney empowers TONY SGRO to take all actions and necessary measures to accomplish the objectives set forth in paragraph 2, above.

Unanimously approved by the Shareholders and the Directors of the Corporation on this 31st day of May, 2006.

**FILED**

APR 1 2006

**CLERK, U.S. DISTRICT COURT**
**DISTRICT OF NEVADA**

BY_____DEPUTY

_____
FREDRICK "RICK" RIZZOLO

_____
BARTHOLOMEW "BART" RIZZOLO

Subscribed and Sworn to before me

this _1_ day of June, 2006.

_____
Notary Public in and for Clark County,
State of Nevada

NOTARY PUBLIC
KIM DILIBERTO
STATE OF NEVADA - COUNTY OF CLARK
MY APPOINTMENT EXP. FEBRUARY 14, 2008
No: 04-85789-1

## WAIVER OF NOTICE AND CONSENT TO HOLD
## SPECIAL MEETING OF THE SHAREHOLDERS AND BOARD OF
## DIRECTORS OF THE POWER COMPANY, INC.

### A Nevada Corporation

**THE UNDERSIGNED**, being all of the Shareholders and Directors of the above-named Nevada corporation,

HEREBY WAIVE NOTICE of the Special Meeting of the Shareholders and Directors of the Corporation and Consent to the holding thereof on the 31st day of May, 2006, for the transaction of any business that may properly be brought before the Board of Directors.

_____
FREDRICK RIZZOLO

_____
BARTHOLOMEW "BART" RIZZOLO

## MINUTES OF SPECIAL MEETING OF THE
## SHAREHOLDERS AND BOARD OF DIRECTORS OF

## THE POWER COMPANY, INC.

A Nevada Corporation

A SPECIAL MEETING of the Shareholders and Board of Directors of the above-named Nevada corporation was held on the 31st day of May, 2006, pursuant to a Waiver of Notice and Consent to Hold Special Meeting (the Waiver) signed by all the shareholders and directors of the corporation.

In attendance were all the shareholders and directors of the corporation.

The Secretary of the corporation presided over the meeting and acted as Secretary of the meeting.

The Secretary presented the Waiver signed by all such persons. On motion duly made, seconded, and unanimously carried, the foregoing Waiver was made a part of the record of the meeting, and the Secretary was authorized and directed to place it into the corporation records immediately preceding the Minutes of this meeting.

The Secretary of the Corporation presented the attached Resolution for consideration by the Shareholders and Board of Directors. The Secretary moved that the Resolution be passed, the motion was seconded, and the Shareholders and the Board unanimously passed the Resolution.

There being no further business, the meeting was adjourned.

DATED: This 31st day May, 2006.

FREDRICK "RICK" RIZZOLO

BARTHOLOMEW "BART" RIZZOLO

1  DANIEL G. BOGDEN
   United States Attorney
2  ERIC JOHNSON
   Chief, Organized Crime Strike Force
3  TIMOTHY VASQUEZ
   Assistant United States Attorney
4  District of Nevada
   Lloyd D. George United States Courthouse
5  333 Las Vegas Boulevard South
   Suite 5037
6  Las Vegas, Nevada 89101
   (702) 388-6336/Fax: (702) 388- 6418
7

8                    UNITED STATES DISTRICT COURT

9                        DISTRICT OF NEVADA

10                             -oOo-

11   UNITED STATES OF AMERICA,          )   2:06-cr-186-PMP-PAL
                                        )   2:05cr17 KJD (LRL)
12               Plaintiff,             )
                                        )
13   vs.                                )   **PLEA MEMORANDUM**
                                        )
14   THE POWER COMPANY, INC.,           )
                                        )
15               Defendant Corporation. )
                                        )
16   ─────────────────────────────────

17       The United States, by and through DANIEL G. BOGDEN, United States Attorney, and Eric

18   Johnson, Chief, Organized Crime Strike Force, and Timothy Vasquez, Assistant United States

19   Attorney, District of Nevada, and the Defendant Corporation THE POWER COMPANY, INC., and

20   the Defendant Corporation's attorney, Anthony Sgro, Esq., submit this plea memorandum.

21                                     I.

22                            **PLEA AGREEMENT**

23       This agreement is contingent on the fact that co-defendants FREDERICK RIZZOLO,

24   ROBERT D'APICE, VINCENT FARACI, JOSEPH MELFI, ALBERT RAPUANO, JOHN DRACE,

25   STEVE ALBERTS, DARREN BRUY, STEVE CRESPI, ROCCO LOMBARDO, MICHAEL

26   LOMONACO, MICHAEL MUSCATO, RALPH POPE, SCOTT SPERONI, JAMES STRESING,

     ROBERT UBRIACO, and PAULA McBRIDE successfully enter their guilty pleas together with

1   Defendant Corporation, THE POWER COMPANY, INC., and that all pleas are accepted by the

2   Court.[1]

3       The United States and the Defendant Corporation have reached the following plea agreement,

4   under which the sentencing guideline calculations are binding on the court pursuant to Rule 11(e)(1)

5   ( c) of the Federal Rules of Criminal Procedure:

---

[1] The Court of Appeals for the Ninth Circuit has cautioned that if a plea agreement is part
of a package, the trial court must take special care to ensure that the plea is voluntary:

> Though package deal plea agreements are not per se
> impermissible, they pose an additional risk of coercion not
> present when the defendant is dealing with the government
> alone. *See United States v. Wheat*, 813 F.2d 1399, 1405
> (9th Cir.1987), *aff'd*, 486 U.S. 153, 108 S. Ct. 1692, 100 L.
> Ed.2d 140 (1988); *United States v. Castello*, 724 F.2d 813,
> 814-15 (9th Cir.), cert. denied, 467 U.S. 1254, 104 S. Ct.
> 3540, 82 L. Ed.2d 844 (1984). Quite possibly, one
> defendant will be happier with the package deal than his
> codefendant(s); looking out for his own best interests, the
> lucky one may try to force his codefendant(s) into going
> along with the deal. The Supreme Court has therefore
> observed that tying defendants' plea decisions together
> "might pose a greater danger of inducing a false guilty plea
> by skewing the assessment of the risks a defendant must
> consider." *Bordenkircher v. Hayes*, 434 U.S. 357, 364 n.
> 8, 98 S. Ct. 663, 668 n. 8, 54 L. Ed.2d 604 (1978)
> (dictum). We, in turn, have recognized that "the trial court
> should make a more careful examination of the
> voluntariness of a plea when [it might have been] induced
> by ... threats or promises" from a third party. *Castello*, 724
> F.2d at 815. We make it clear today that, in describing a
> plea agreement under Rule 11(e)(2), the prosecutor must
> alert the district court to the fact that codefendants are
> entering a package deal.

*United States v. Caro*, 997 F.2d 657, 659-660 (9th Cir.1992).

2

**A.     The Plea**

The Defendant Corporation will plead guilty to Count One of the Information charging conspiracy to participate in an enterprise engaged in racketeering activity in violation of Title 18, United States Code, Section 1962(d).

The Defendant Corporation also agrees to forfeit $4,250,000.00 pursuant to Title 18, United States Code, Section 1963(a)(1), (2), and (3), as set forth in Forfeiture Allegation One of the Information. The $4,250,000.00 will be paid no later than at the time of the sale of Crazy Horse Too.

**B.     Agreement not to Bring Additional Charges**

The United States Attorney's Office for the District of Nevada (the "Government" or the "United States") agrees not to bring any additional charge or charges against the Defendant Corporation arising out of the investigation in the District of Nevada that culminated in this Plea Memorandum. However, this agreement does not foreclose prosecution for an act of murder or any conspiracy to commit any such act.

**C.     Sentencing Guideline Calculations**

The parties agree to the following calculations of the Sentencing Guidelines:

1.      The Defendant Corporation understands and the government agrees that USSG § 2E1.1(a)(1) applies to his conviction on Count One of the Information for violating Title 18, United States Code, Section 1962(d). USSG § 2E1.1(a)(1) provides that the base offense level for a conviction should be 19 unless the "offense level applicable to the underlying crime or racketeering activity" is greater than 19. USSG § 2E1.1(a)(2).

2.      The base offense level for extortion is 18. (USSG § 2B3.1(a)) A two level enhancement applies for an implied or express threat of death or bodily injury or kidnaping. (USSG § 2B3.1(b)(1)) A 6 level enhancement applies for the causing of a permanent or life threatening bodily injury. (USSG § 2B3.1(4)( c)) The extortion racketeering act or acts have a total offense level of 26.

3

3.     The base offense level for fraud is six.  (USSG § 2B1.1(a)(2)).  A eight level enhancement applies for total amount of fraud. (USSG § 2B1.1(b)(1)). The fraud racketeering act or acts have a total offense level of 14.

4.     Pursuant to USSG § 3D1, Defendant Corporation's total offense level is 26.

5.     The Defendant Corporation's Criminal History Category will be determined by the court.

6.     The United States will make a motion to the sentencing court recommending that the Defendant Corporation receive a three-level adjustment for acceptance of responsibility unless the Defendant Corporation (a) does not make a complete factual basis for the guilty plea at the time it is entered; (b) is untruthful with the Court or probation officers; ( c) denies involvement in the offense or provides conflicting statements regarding the Defendant Corporation's involvement; (d) attempts to withdraw the guilty plea; (e) engages in criminal conduct; or (f) fails to appear in Court;  (g) violates the conditions of the Defendant Corporation's pretrial release conditions.

**D.   Sentencing Recommendation and Information to the Court**

The United States agrees to stand silent as to a recommended sentence within the guideline range determined by the binding offense level calculations and the Defendant Corporation's criminal history. Defendant Corporation does not waive the binding nature of this plea agreement if Defendant Corporation seeks a sentence outside the stipulated guideline range. If Defendant Corporation seeks a sentence outside the guideline range, the United States reserves the right to oppose any such requested sentence.

Nothing in this Agreement shall preclude the government in any way from presenting any accurate information regarding any matter, including but not limited to, any sentencing matter or consideration, to the sentencing court or the United States Department of Probation. And, nothing in this Agreement restricts the Court's or Probation Department's access to information and records in

4

1  the possession of the government.  Nothing in this Agreement shall limit in any way the government's

2  comments in, and responses to, any post-sentencing matter.

3  **E.  Fines and Special Assessment**

4        1.      The Government and Defendant Corporation agree that the court should impose a

5  $500,000 fine upon Defendant Corporation at the time of Defendant Corporation's sentencing for its

6  conviction on Count One of the Information.

7        2.      The Defendant Corporation agrees that the court may impose a fine due and payable

8  immediately upon sentencing.

9        3.      The Defendant Corporation will pay the special assessment of $100 per count of

10  conviction at the time of sentencing.

11  **F.  Restitution**

12        1.  Defendant Corporation agrees to make restitution in an amount of $10,000,000 as

13  compensation for injury and damages to Kirk and Amy Henry, with $1,000,000 due immediately

14  upon the entry of Defendant Corporation's plea and the remainder due and to be paid from the

15  proceeds of the sale of THE CRAZY HORSE TOO at the time of the closing of its sale.  Defendant

16  Corporation understands that any restitution imposed by the Court may not be discharged in whole

17  or in part in any present or future bankruptcy proceeding.  The parties agree that this payment to the

18  Henrys is made as a remedial measure to compensate the Henrys and does not constitute a fine or

19  similar penalty.

20        2. Defendant Corporation agrees to make restitution in an amount of $1,734,000 to the Internal

21  Revenue Service (IRS).  All matters related to Defendant Corporation's $1,734,000 restitution to the

22  IRS shall be governed by the Closing Agreement between the Defendant Corporation and the IRS.

23  This Plea Agreement is contingent on Defendant Corporation and the IRS entering a Closing

24  Agreement.  Upon entry of the said Closing Agreement, the agreement shall be attached to this Plea

25  Agreement and incorporated herein by reference.  This restitution amount is a restatement of the same

26  restitution amount for which  FREDERICK RIZZOLO  is required to make to the Internal Revenue

5

Service pursuant to his separate plea agreement. Defendant Corporation agrees that it is jointly and severably liable for this restitution. Defendant Corporation understands that any restitution imposed by the Court may not be discharged in whole or in part in any present or future bankruptcy proceeding.

### G. Forfeiture

1.  Defendant Corporation agrees to forfeit to the United States of America voluntarily and immediately all of its rights to, title in, and interest in the $4,250,000.00 from the proceeds of the sale of THE CRAZY HORSE TOO pursuant to Title 18, United States Code, Section 1963(a)(1), (2), and (3), as set forth in Forfeiture Allegation One of the Information. Defendant Corporation agrees the $4,250,000.00: (1) is property defendant acquired or maintained in violation of Title 18, United States Code, Section 1962; (2) is an interest in, security of, claim against, or property or contractual right of any kind affording a source of influence over an enterprise which the defendant established, operated, controlled, conducted, or participated in violation of Title 18, United States Code, Section 1962; and (3) is property constituting, or derived from, any proceeds which the defendant obtained, directly or indirectly, from racketeering activity or unlawful debt collection in violation of Title 18, United States Code, Section 1962.

2.  Defendant Corporation knowingly and voluntarily waives its right to a jury trial on the forfeiture of the $4,250,000.00. Defendant Corporation knowingly and voluntarily waives all constitutional, legal, and equitable defenses to the forfeiture of the $4,250,000.00 in any administrative, criminal, or civil proceedings. Defendant Corporation knowingly and voluntarily waives the statue of limitations and the CAFRA requirements in any administrative, criminal, or civil proceedings regarding the $4,250,000.00. Defendant Corporation agrees to waive any jeopardy defense or claim of double jeopardy, whether constitutional or statutory, and agrees to waive any claim or defense under the Eighth Amendment to the United States Constitution, including any claim of excessive fine, to the forfeiture of $4,250,000.00 by the United States of America.

3.    Defendant Corporation agrees that the forfeiture as set forth in this agreement shall not be deemed or treated as satisfaction of any fine, restitution, cost of imprisonment, or any other penalty this Court may impose upon the Defendant Corporation in addition to forfeiture.

4.    Defendant Corporation voluntarily agrees to assert no claim and file no pleading in any administrative, civil or criminal judicial proceedings concerning the $4,250,000.00 and waives any and all requirements concerning notice of such proceedings, including service of process. Defendant Corporation voluntarily agrees to withdraw any claim or pleading in any administrative, civil or criminal judicial proceeding concerning $4,250,000.00.

**H.  Waiver of Appeal**

In exchange for the concessions made by the United States in this plea agreement, the Defendant Corporation knowingly and expressly waives the right to appeal any sentence that is imposed within or below the applicable Sentencing Guideline range as determined by the Court, further waives the right to appeal the manner in which that sentence was determined on the grounds set forth in Title 18, United States Code, Section 3742, and further waives the right to appeal any other aspect of the conviction or sentence, including any order of restitution. Defendant Corporation reserves only the right to appeal any portion of the sentence that is higher than the sentencing guideline range determined by the Court. The Defendant Corporation also agrees to waive any right to bring any collateral attack against his conviction or sentence, except for a claim of ineffective assistance of counsel. This agreement does not affect the rights or obligations of the United States as set forth in Title 18, United States Code, Section 3742(b); and therefore the government retains all its appeal rights.

**I.  Additional Promises, Agreements, and Conditions**

1.  Defendant Corporation, THE POWER COMPANY, INC., within 12 months from the entry of its plea shall sell THE CRAZY HORSE TOO. If upon the expiration of the 12-month period for selling THE CRAZY HORSE TOO, Defendant Corporation has signed in good faith a

7

sales contract for THE CRAZY HORSE TOO, Defendant Corporation may have up to sixty days

grace period to close the sale of THE CRAZY HORSE TOO. However, Defendant Corporation

will be obligated to pay Nevada statutory interest on any unpaid restitution or forfeiture amounts

beginning 12 months from the entry of the Defendant Corporation's plea to the time of closing.

Defendant Corporation will be obligated to pay federal statutory interest on any unpaid amount of

the $1,734,000 restitution to the IRS from the date of the assessment of the tax amount pursuant to

the Closing Agreement between the Defendant Corporation and the IRS. Defendant is entitled,

but not required, to make payments toward restitution and forfeiture at any time prior to the

closing of the sale of the Crazy Horse Too. After ensuring that management fees and other lawful

operating expenses and obligations of the Crazy Horse Too are paid in a regular and customary

manner from revenue of the business, the Government's interest in the net proceeds from regular

business operations of the Crazy Horse Too is limited to the interest accrued pursuant to this

provision. Said interest shall be due and paid by Defendant Corporation from the sale proceeds at

the time of closing.

2. If at the end of the 12-month period for selling of THE CRAZY HORSE TOO,

Defendant Corporation has not sold THE CRAZY HORSE TOO or does not have a pending sale

of THE CRAZY HORSE TOO, the Government and defendant, through their counsel, will confer

in a good faith effort to determine and agree on a third party manager/seller of the Crazy Horse

Too. If the parties are unable to reach an agreement as to an appropriate manager/seller, then

either or both parties may apply to the Court for a determination of the manager/seller. The third

party manager/seller shall be a licensed, nationally recognized management/commercial sales firm.

The manager/seller will be responsible to: 1) lawfully operate the Crazy Horse Too during the time

the business is being sold in such manner the manager/seller deems appropriate to best maintain or

enhance the value of the Crazy Horse Too and the profitability of its ongoing operations; and 2) to

sell the club in as reasonable time as possible and in a manner the manager/seller believes is best

designed to maximize or to obtain the fair market value of the the Crazy Horse Too at the time it is

sold. If either party believes that the manager/seller is not properly operating the Crazy Horse Too

or the terms of the sale of the Crazy Horse Too are not reasonable or the sale price is not

reasonably within the parameters of fair market value at the time of sale, the party can ask the

Court to disapprove the sale.

3. The Government shall have the right to disapprove a Buyer of THE CRAZY HORSE

TOO who the Government objectively demonstrates is a close relative or ongoing business partner

of FREDERICK RIZZOLO, is a multiple felon or a felon within the last ten years, or has business

dealings with identified members and associates of the La Cosa Nostra (LCN) or other identified

organized crime group or has been convicted of a crime with identified members and associates of

the LCN or other identified organized crime group.

4. During the 12 month period of sale, Defendant Corporation will make available to such

individuals as the Government directs the accounting books and records of THE CRAZY HORSE

TOO for the purpose of ensuring the lawful operation of the business. The Government may

request Defendant Corporation to make changes in its accounting policies and procedures and its

other operating policies to ensure appropriate compliance with state and federal tax and criminal

laws and to insure the safety of patrons and employees of THE CRAZY HORSE TOO. If

Defendant Corporation refuses to institute any requested policy or procedure changes, the

Government may petition the Court for additional conditions of supervised release for the purpose of instituting such policies and procedures.

5. Pursuant to the Defendant Corporation's obligation to make restitution as compensation for injury and damages to Kirk and Amy Henry in the aggregate amount of Ten Million Dollars ($10,000,000) upon the sale of THE CRAZY HORSE TOO Gentleman's Club, said funds will be deposited with the Clerk of the Court in an interest bearing account. Thereafter, the Clerk of the Court, upon receipt of proper notice from Kirk and Amy Henry, will transfer said funds to a designated Title 26, United States Code, Section 468B Qualified Settlement Trust Fund to permit the funding of structured annuities established for the benefit of Kirk and Amy Henry. In conjunction thereto, Defendant Corporation, THE POWER COMPANY, INC., agrees to execute any and all written instruments necessary to effectuate the intent and purpose of the transfer of funds pursuant to this section.

6. In exchange for the United States entering into this agreement, the Defendant Corporation agrees that (a) the facts set forth in Section IV of this Plea Agreement shall be admissible against the Defendant Corporation under Fed. R. Evidence 801(d)(2)(A) in the following circumstances: (1) for any purpose at sentencing; and (2) in any subsequent proceeding, including a trial in the event the Defendant Corporation does not plead guilty or withdraws the Defendant Corporation's guilty plea, to impeach or rebut any evidence, argument or representation offered by or on the Defendant Corporation's behalf; and (b) the Defendant Corporation expressly waives any and all rights under Fed. R. Criminal P. 11(f) and Fed. R. Evid. 410 with regard to the facts set forth in Section IV of the Plea Agreement to the extent set forth above.

10

7.     The parties agree that no promises, agreements, and conditions have been entered into other than those set forth in this plea memorandum, and will not be entered into unless in writing and signed by all parties.

## J.   Limitations

This Plea Agreement is limited to the United States Attorney's Office for the District of Nevada and cannot bind any other federal, state or local prosecuting, administrative, or regulatory authority. However, this Plea Memorandum does not prohibit the United States through any agency thereof, the United States Attorney's office for the District of Nevada, or any third party from initiating or prosecuting any civil proceeding directly or indirectly involving the Defendant Corporation, including but not limited to, proceedings under the False Claims Act relating to potential civil monetary liability or by the Internal Revenue Service relating to potential tax liability.

## II.

## PENALTY

1.     The maximum penalty for a corporation violating Title 18, United States Code, Section 1962(d) is a fine of not more than $500,000.

2.     The Defendant Corporation is subject to supervised release for a term of at least three years but not more than five years.

3.     The Defendant Corporation must pay a special assessment of $100 for its count of conviction.

11

4.      The Defendant Corporation is required to pay for the costs of probation and supervised release, unless the Defendant Corporation establishes that the Defendant Corporation does not have the ability to pay such costs, in which case the court may impose an alternative sanction such as community service.

## III.

## ELEMENTS

Section 1962(d) of Title 18 of the United States Code provides that:

It shall be unlawful for any person to conspire to violate any of the provisions of subsections (a), (b), or (c) of this Section."

Section 1962(c) of Title 18, United States Code provides, in part, that:

It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity . . . .

In order to sustain its burden of proof for the crime of conspiring to participate in the affairs of an interstate enterprise through a pattern of racketeering activity as charged in Count Two of the Indictment, the government at trial would have to prove the following four essential elements beyond a reasonable doubt:

First, a conspiracy or agreement, as detailed in the information, existed between two or more persons to participate through a pattern of racketeering activity in the affairs an enterprise consisting of a group of individuals associated in fact;

12

Second, the defendant deliberately joined or became a member of the conspiracy or agreement with knowledge of its purpose;

Third, the defendant agreed that someone, not necessarily the defendant, would commit at least two racketeering acts; and

Fourth, the enterprise engaged in or its activities in some way affected commerce between two or more states.

## IV.

## FACTS THAT SUPPORT GUILTY PLEA

1.    The Defendant Corporation is pleading guilty because the Defendant Corporation is guilty of the offense charged in Count One of the Information.

2.    In pleading to that offense, the Defendant Corporation acknowledges that if the Defendant Corporation elected to go to trial instead of entering this plea, the United States could prove facts sufficient to establish beyond a reasonable doubt that the Defendant Corporation is guilty of the offense charged in Count One of the Information.

3.    The Defendant Corporation specifically admits and declares under penalty of perjury that all of the facts set forth below are true and correct:

4.    At all times material to this Agreement, the Defendant Corporation, THE POWER COMPANY, INC., doing business as THE CRAZY HORSE TOO (hereinafter sometimes referred to as THE CRAZY HORSE TOO), ROBERT D'APICE, and other individuals constituted a racketeering enterprise (hereinafter "the enterprise") as defined by Title 18, United States Code,

Section 1961(4), to wit: a group of individuals associated in fact, which enterprise was engaged in and the activities of which affected interstate and foreign commerce.

5.     At all times material to this agreement, Defendant Corporation, THE POWER COMPANY, INC., owned and operated a business known as THE CRAZY HORSE TOO in Las Vegas, Nevada. At all times material to this agreement, and continuing to the date of this agreement, defendant ROBERT D'APICE, was a shift manager at the business operation of Defendant Corporation, THE POWER COMPANY, INC., doing business as THE CRAZY HORSE TOO.

6.     At all times material to this agreement, THE CRAZY HORSE TOO in Las Vegas, Nevada, was commonly known as a "gentlemen's club" or "strip club." The terms "gentlemen's club" and "strip club" generally refer to business establishments in which women dance semi-nude as entertainment for the establishments' patrons. THE CRAZY HORSE TOO provided entertainment to large numbers of tourists traveling from outside the State of Nevada into the State of Nevada.

7.     During the period from 2000 to 2003, the Defendant Corporation conspired and agreed with ROBERT D'APICE, and other individuals to conduct or participate, directly or indirectly, in the conduct of the enterprise's affairs through a pattern of racketeering activity, to wit: acts of extortion and threats indictable under Title 18, United States Code, Sections 1951 and 1952, and Nevada Revised Statutes, Sections 205.320, 193.330, and 195.020; acts of access device fraud and wire fraud indictable under Title 18, United States Code, Sections 1029 and 1343; and acts of mail fraud and wire fraud indictable under Title 18, United States Code, Sections 1341 and 1343.    It was a further part of the conspiracy that each defendant agreed that a

14

conspirator would commit at least two acts of racketeering activity in the conduct of the affairs of the enterprise.

8.     At all times material to this agreement, dancers generally collected payments from patrons of THE CRAZY HORSE TOO for dances or other services the dancers provided.  If a patron refused to pay a dancer, or if a patron disputed the charges claimed by a dancer, the dancer typically followed the procedure of initially contacting the shift manager, or other male employees at THE CRAZY HORSE TOO.  As part of and in furtherance of the conspiracy, the shift manager or other male employees. during the course of the conspiracy and acting within the scope of their employment at THE CRAZY HORSE TOO, on one or more occasions (depending in part on the patron and other circumstances) sought to extort payment from patrons through explicit or implicit threats of violence, or through actual use of force and physical violence against patrons to force the patron to pay the disputed payment.   In carrying out this purpose of the enterprise, managers and employees of THE CRAZY HORSE TOO, engaged in acts and threats involving extortion in violation of state law, with intent to extort or gain any money or other property and did threaten directly and indirectly to do an injury to any person or to any property, in violation of Nevada Revised Statutes, Sections 205.320, 193.330, and 195.020.  Managers and employees of THE CRAZY HORSE TOO also interfered with commerce by threats and violence, and conspired to commit this offense, indictable under Title 18, United States Code, Section 1951 and used interstate facilities in furtherance of unlawful activity, to wit: extortion in violation of the laws of the State of Nevada, indictable under Title 18, United States Code, Section 1952.

9.     At all times material to this agreement, dancers on one or more occasions sought to defraud customers of THE CRAZY HORSE TOO by overcharging the customers for dances or

15

other services provided or by causing charges on a customer's credit card in excess of the dances or other services provided. If a patron refused to pay a dancer, or if a patron disputed the charges claimed by a dancer, dancers contacted the shift manager, or other male employees at THE CRAZY HORSE TOO. As part of and in furtherance of the conspiracy, the shift managers or other male employees, during the course of the conspiracy and acting within the scope of their employment at THE CRAZY HORSE TOO, on one or more occasions (depending on the patron and other circumstances) assisted the dancers in the commission of the fraud by extorting payment from patrons through explicit or implicit threats of violence, or through actual use of force and physical violence against patrons to force the patron to pay the disputed payment.      In carrying out this purpose, managers and employees of THE CRAZY HORSE TOO used or caused to be used interstate wire communications facilities in furtherance of a scheme to defraud, including schemes involving the overcharging of customers for services dancers did not provide or misrepresented were provided in violation of Title 18, United States Code, 18 U.S.C. Section 1343, and fraudulently effected transactions involving the use of unauthorized access devices, indictable under Title 18, United States Code, Section 1029.

10.      As part of and in furtherance of the conspiracy, Defendant Corporation, THE POWER COMPANY, INC, doing business as THE CRAZY HORSE TOO, did not report or maintain records of the money received from the dancers. The management of THE CRAZY HORSE TOO used this unreported cash income from the business to supplement the wages of certain employees. More particularly, at the end of each shift, the shift managers of THE CRAZY HORSE TOO divided the aggregate sum collected from the dancers into portions or shares that were then distributed among certain of THE CRAZY HORSE TOO's male employees. The club's

16

floormen, bouncers, bartenders, and the shift managers themselves all received a share of the

currency collected from the dancers. As a result of the procedures of THE CRAZY HORSE TOO

persons receiving the cash salary payments generally under-reported amounts received to THE

CRAZY HORSE TOO's bookkeeping staff. By failing to report or record the cash payments to

the club's employees, the owners of THE CRAZY HORSE TOO and certain of the participating

employees did not accurately report the income of THE POWER COMPANY, INC., doing

business as, THE CRAZY HORSE TOO, or the income of the owners, managers, and employees

of THE CRAZY HORSE TOO to the Nevada Employment Security Division, and to industrial

(workman's compensation) insurance providers. In carrying out this purpose, THE CRAZY

HORSE TOO used or caused to be used the mails and private or commercial interstate carriers in

furtherance of schemes to defraud, including schemes involving unauthorized use of access

devices and failure to accurately report and pay unemployment taxes and industrial (workman's

compensation) insurance premiums in violation of Title 18, United States Code, 18 U.S.C. Section

1341, and used or caused to be used interstate wire communications facilities in furtherance of a

scheme to defraud, including schemes involving unauthorized use of access devices and failure to

accurately report and pay unemployment taxes and industrial (workman's compensation) insurance

premiums in violation of Title 18, United States Code, 18 U.S.C. Section 1343.

## V.

## ACKNOWLEDGMENT

1.     The Defendant Corporation, acknowledges by its Authorized Representative's signature

below that the Defendant Corporation's Authorized Representatives have read this Memorandum of

Plea Agreement, that the Defendant Corporation's Authorized Representatives understands the terms

and conditions, and the factual basis set forth herein, that the Defendant Corporation's Authorized

Representatives have discussed these matters with the Defendant Corporation's attorney, and that the matters set forth in this memorandum, including the facts set forth in Part IV above are true and correct.

     2.    The Defendant Corporation acknowledges that the Defendant Corporation has been advised, and understands, that by the Defendant Corporation's Authorized Representatives entering a plea of guilty the Defendant Corporation is waiving, that is, giving up, certain rights guaranteed to the Defendant Corporation by law and by the Constitution of the United States. Specifically, the Defendant Corporation is giving up:

     a.    The right to proceed to trial by jury on the original charges, or to a trial by a judge if the Defendant Corporation and the United States both agree;

     b.    The right to confront the witnesses against the Defendant Corporation at such a trial, and to cross-examine them;

     c.    The right of the Defendant Corporation's agents to remain silent at such trial, with such silence not to be used against the Defendant Corporation in any way;

     d.    The right, should the Defendant Corporations's agents so choose, to testify in the Defendant Corporation's own behalf at such a trial;

     e.    The right to compel witnesses to appear at such a trial, and to testify in the Defendant Corporation's behalf; and,

     f.    The right to have the assistance of an attorney at all stages of such proceedings.

     3.    The Defendant Corporation, the Defendant Corporation's attorney, and the attorney for the United States acknowledge that this Plea Memorandum contains the entire agreement negotiated

and agreed to by and between the parties, and that no other promise has been made or implied either by the Defendant Corporation, its attorney, or the attorney for the United States.

DANIEL G. BOGDEN
United States Attorney

_6-1-06_
DATED

ERIC JOHNSON, Chief, Organized Crime Strike Force

_6/1/06_
DATED

TIMOTHY VASQUEZ, Assistant U.S. Attorney

_5/16/06_
DATED

~~FREDERICK JIZZOLO~~, on behalf of the Defendant Corporation, THE POWER COMPANY, INC.

_5/16/06_
DATED

ANTHONY SGRO, Counsel for Defendant Corporation

Department of the Treasury – Internal Revenue Service

Form 906

# Closing Agreement On Final Determination
# Covering Specific Matters

Under section 7121 of the Internal Revenue Code, <u>Power Company, Inc. (EIN: 88-0115792), of 2476 Industrial Road, Las Vegas, Nevada 89102, and Rick J. Rizzolo, (SSN: 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), of 8632 Canyon View Drive, Las Vegas, Nevada, 89117,</u> and the Commissioner of Internal Revenue make the following closing agreement:

WHEREAS, Power Company, Inc. is a Nevada corporation recognized as a Small Business Corporation under Subchapter S, Section 1361 of the Internal Revenue Code; and

WHEREAS, Rick J. Rizzolo is the president and 90% shareholder of Power Company, Inc.; and

WHEREAS, a dispute has arisen as to whether Power Company, Inc. and/or Rick J. Rizzolo may be liable, under Section 6672 of the Internal Revenue Code, for failure to collect, account for, and pay over F.I.C.A. and Federal Income Tax withholding on tips earned by employees of Power Company, Inc. for the period beginning January 1, 2000, and ending December 31, 2002; and

WHEREAS, a dispute has arisen as to whether Power Company, Inc. and/or Rick J. Rizzolo may be liable, under Section 3121(q) of the Internal Revenue Code, for the employer's share of F.I.C.A. taxes on tips earned by employees of Power Company, Inc. for the period beginning January 1 2000, and ending December 31, 2002; and

WHEREAS, the parties also wish to determine with finality, the prospective tax treatment of a court issued restitution order that obligates Power Company, Inc. to pay to Mr. Kirk Henry the amount of $10,000,000.; and

WHEREAS, the parties have reached a resolution of these disputes and wish to determine with finality any and all tax consequences and liabilities of Power Company, Inc. and Rick J. Rizzolo for all tax periods ending on or before December 31, 2005, inclusive.

Closing Agreement on Final Determination Covering Specific Matters with
Power Company, Inc. (EIN: 88-0115792) and Rick J. Rizzolo (SSN: 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)

NOW IT IS HEREBY DETERMINED AND AGREED as follows:

1.    Power Company, Inc. and Rick J. Rizzolo are jointly and severally liable, under Section 6672 of the Internal Revenue Code, for failure to collect, account for, and pay over F.I.C.A withholding and Federal Income Tax withholding on tips earned by employees of Power Company, Inc. The total aggregate liability under Section 6672 of the Internal Revenue Code, for the taxable periods beginning January 1, 2000, and ending December 31, 2002, is $1,320,000.    The parties agree that the aggregate liability of $1,320,000 shall be assessed against Power Company, Inc. and Rick J. Rizzolo, as responsible parties, for the taxable quarter ended December 31, 2002, notwithstanding any statute of limitations that may otherwise apply.   Power Company, Inc. and Rick J. Rizzolo agree to pay the $1,320,000 promptly upon proper notice and demand. It is further determined that the $1,320,000 shall not produce an allowable deduction for Federal Income Tax purposes in any tax year for Power Company, Inc. or Rick J. Rizzolo.

2.    Power Company, Inc. and Rick J. Rizzolo are jointly and severally liable, under Section 3121(q) of the Internal Revenue Code, for the employer's F.I.C.A tax liability on tips earned by employees of Power Company, Inc. in the aggregate amount of $414,000. for the taxable periods beginning January 1, 2000, and ending December 31, 2002. The $414,000 represents the total liability under Section 3121(q) of the Internal Revenue Code and the parties agree that the aggregate liability of $414,000 shall be assessed against Power Company, Inc. for the taxable quarter ended December 31, 2002, notwithstanding any statute of limitations that may otherwise apply.   Power Company, Inc. and Rick J. Rizzolo agree to pay the $414,000 promptly upon proper notice and demand. It is further determined that the $414,000 shall be allowed as deduction by Power Company, Inc. for Federal Income Tax purposes, under Section 162 of the Internal Revenue Code, in the tax year such liability is actually paid.

3.    Power Company, Inc. shall be allowed a Federal Income Tax deduction, under Section 162 of the Internal Revenue Code, for the $10,000,000 payable to Kirk Henry pursuant to the court issued restitution order obligating Power Company, Inc. to make such payment(s).   Such deduction(s) shall be allowed in the taxable year such payment(s) are actually made, subject to all applicable statutes in effect for the year of payment.

4.    The Internal Revenue Service hereby agrees that, except for the specific liabilities enumerated above, it will not assert or assess any additional Federal income tax liabilities or employment tax liabilities, including any civil penalties, of any kind against Power Company, Inc. and / or Rick J. Rizzolo, in any capacity, for any taxable period ending on or before December 31, 2005.

5.    This agreement shall not limit the authority of Power Company, Inc.  and / or Rick J. Rizzolo to file amended returns for any tax period to carryback any net operating losses or tax credits arising from any tax years beginning on or after January 1, 2006.

Closing Agreement on Final Determination Covering Specific Matters with
Power Company, Inc. (EIN: 88-0115792) and Rick J. Rizzolo (SSN: 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)

This agreement is final and conclusive except:
1. The matter it relates to may be reopened in the event of fraud, malfeasance, or misrepresentation of a material fact
2. It is subject to the Internal Revenue Code sections that expressly provide that effect be given to their provisions (including any stated exceptions for Code section 7122) notwithstanding any other law or rule of law to the contrary; and
3. If it relates to a tax period ending after the date of this agreement, it is subject to any law, enacted after the date of this agreement, that applies to that tax period.

By signing, the above parties certify that they have read and agreed to the terms of this document.

Rick J. Rizzolo _____   Date: 6-1-06

Taxpayer's Representative _____   Date: 6/1/06

Power Company, Inc. _____   Date: _____

   By: _____   Date: _____

   Title: President

Commissioner of Internal Revenue

   By: _____   Date: _____

   Title: _____